# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MICHAEL F. GELBART,**

    **Plaintiff,**

    v.                                      Civil Action 2:19-cv-3011
                                          Judge Sarah D. Morrison
                                          Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Michael F. Gelbart ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

        **I.**         **PROCEDURAL HISTORY**

Plaintiff protectively filed his application under Title II of the Social Security Act for a period of disability and disability insurance benefits on January 12, 2016. (R. at 188–89.) He filed an application under Title XVI for supplemental security income that same day. (*Id*. at 190–96.) In both applications, Plaintiff alleged a disability onset of December 31, 2012. (*Id*. at

188, 190.) Plaintiff's applications were denied initially on May 31, 2016, and upon reconsideration on August 3, 2016. (*Id*. at 131–37, 142–46.) Plaintiff sought a hearing before an administrative law judge. (*Id*. at 148–53.) Administrative Law Judge Noceeba Southern (the "ALJ") held a video hearing on April 11, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 13, 17.) Vocational expert Mark A. Pinti (the "VE") appeared and testified by phone at the hearing. (*Id*. at 13, 24.) On August 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 10–30.) On May 13, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.) In his Statement of Errors (ECF No. 8), Plaintiff contends that the ALJ erred in classifying Plaintiff's headaches[1] as a non-severe impairment at step two of the sequential evaluation process and, therefore, failed to properly consider Plaintiff's headaches at the subsequent steps.

## II. THE ADMINISTRATIVE DECISION

On August 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10–30.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2016. (*Id*. at 16.) At step one of

---

[1] Plaintiff refers to these headaches as "migraine headaches" in his Statement of Errors. (ECF No. 8.) The undersigned notes that the record does not contain a formal diagnosis of "migraine headaches." The record does, however, reflect diagnoses of "occipital neuralgia and chronic headache." (R. at 577.) The undersigned further notes that the portions of the administrative decision and administrative record referenced in Plaintiff's Statement of Errors (ECF No. 8) as pertaining to his "migraine headaches" appear to document the occipital neuralgia and chronic headache diagnoses. To avoid confusion, the undersigned will refer to the impairment at issue as "headache," throughout.

2

the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since December 31, 2012, the alleged onset date of Plaintiff's disability. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; chronic obstructive pulmonary disease (COPD); osteoarthritis; an affective disorder; an anxiety disorder; degenerative joint disease of the bilateral knees and hips; and obesity. (*Id.*) The ALJ also noted several non-severe impairments, including headaches. (*Id.* at 17.) The ALJ explained her reasoning as follows:

> The claimant testified that he has pain around his eyes and behind his eyes every day. He also stated that sometimes he has blurry vision. The treatment notes show that in July 2016, the claimant reported that he had been having episodic headaches for 6 months and they could last all day but were characterized as only moderate (Exhibit 14F/1). He was diagnosed with occipital neuralgia and chronic headache. However, findings on examination were generally normal and he was treated with medication (Exhibit 15F/1, 5). Treatment notes from October 2017 indicate that the claimant had not met with his family physician for over a year and he reported only minor complaints (Exhibit 17F/4). Treatment notes from November 2017 show that the claimant denied headaches (Exhibit 17F/1). Thus, this is found to be nonsevere since there is no indication that this has more than a minimal impact on the claimant's ability to work.

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

(*Id*.)  At step three, the ALJ found that Plaintiff did not have a severe impairment or combination of severe impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. at 17–18.)  At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand/walk 4 hours in an 8 hour day, can sit for 6 hours in an 8 hour day, can tolerate pushing and pulling occasionally with the bilateral lower extremities, can occasionally climb ramps and stairs, occasionally stoop, kneel, crouch and crawl, frequently balance, must avoid ladders, ropes or scaffolds, unprotected heights, moving or heavy machinery, frequent exposure to fumes, odors, dust and gases, limited to simple, routine tasks, occasional interaction with the public, goal based work not at a fast production rate pace with no strict production rate quotas, can tolerate occasional decision making and occasional changes so as to provide low stress.

(*Id*. at 18.)  In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including treatment records, medical opinion evidence, and Plaintiff's hearing testimony.  (*Id*. at 19–23.)  At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff is not capable of performing his past relevant work as a dump truck driver or as a telemarketer.  (*Id*. at 23.)  The ALJ further found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (*Id*. at 23–24.)  Examples include laundry folder, inspector, and packager.  (*Id*. at 24.)  The ALJ found that Plaintiff is capable of making a successful adjustment to such employment.  (*Id.*)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

### III. RELEVANT EVIDENCE OF RECORD

#### A. Treatment Notes

The record includes treatment notes reflecting headaches dating back to mid-2013. Plaintiff visited Doctors Hospital Nelsonville for follow-up from an April 2013 seizure.[3] (*Id*. at 493.) The treatment notes from that visit state that Plaintiff "was admitted to Lancaster Hospital with diagnosis of seizure disorder, but his only complaint today is mainly that he is having frontal headaches with some dizziness ever since he started on the seizure medication that he started in Lancaster." (*Id*.)

In a follow-up appointment with Dana Johnson, CNP at Fairfield Medical Center Lancaster Neurology Services on August 13, 2013, Plaintiff again complained of headaches. (*Id*. at 516.) Nurse Johnson noted as follows:

> Having headaches on back right side of head. Every [once] in a while when sitting feels like in a "daydream state." Lasts for a couple of minutes then feels okay. Feels dizzy at times. Sometimes feels like whole room spinning and if he lies back, feels like he is being turned upside down. P/s on headaches 5/10.

(*Id*.) Nurse Johnson's physical exam of Plaintiff revealed normal results, except as related to his recent seizure activity. (*Id*. at 517–19.)

Several years pass without mention of headaches in Plaintiff's treatment records. On December 16, 2015, Plaintiff saw James Foglesong, DO at Athens Medical Associates with the chief complaint of "headache." (*Id*. at 343–47.) Dr. Foglesong noted "Patient has been having headaches for over a month now, from the time he wakes up till the time he goes to bed. Also wakes him up at night." (*Id*. at 343.) He recorded that the headaches were of "moderate" severity, and that "patient denies . . . significant headaches." (*Id*. at 345.) The results of Dr.

---

[3] The record does not include the page containing signature and date from this visit's treatment notes.

Foglesong's physical examination were normal, noting that Plaintiff "is well developed, well nourished, and in no acute distress." (*Id*. at 346.) Dr. Foglesong ordered a CT of Plaintiff's head and brain. (*Id*.) The record does not contain results from any such CT scan.

Plaintiff first saw Shauna Glenn, NP at HVMG Family Practice on March 25, 2016. (*Id*. at 464.) Plaintiff reported that he "feels well with minor complaints and has good energy level." (*Id*.) He did, however, complain of recurrent headaches, which Nurse Glenn described as follows:

> The onset of the headache has been gradual and has been occurring in a persistent pattern for 6 months. The course has been recurrent. The headache is characterized as moderate. The headache is experienced any time of the day (no diurnal variation). The headache is described as being located in the temporal area. The symptoms are not aggravated by tension/nervous strain, noise or bright light.

(*Id*.) Nurse Glenn's physical exam of Plaintiff revealed normal results. (*Id*. at 464–66.) She prescribed medication for Plaintiff's headaches and noted that he would be requesting medical records related to treatment by prior physicians. (*Id*. at 466.)

Plaintiff saw Nurse Glenn and John W. Woltz, DO on April 22, 2016, complaining of headaches. (*Id*. at 461, 583.) The providers each described the headaches as follows:

> The onset of the headache has been gradual and has been occurring in an episodic pattern for 6 months. Each episode lasts days ("lasts pretty much all day"). The course has been recurrent. The headache is characterized as moderate. The headache is experienced any time of the day (no diurnal variation). The headache is described as being located in the temporal area ("mostly behind the left eye"). The symptoms are not aggravated by tension/nervous strain, noise or bright light.
>
> Suffers with a dull [headache] all day and then at times its [sic] worse and sometimes affects vision.

(*Id*.) The physical exam of Plaintiff again revealed normal results. (*Id*. at 462–63, 584–85.) The recommended treatment was summarized as follows: "Has bad [headaches] a few times a month and a dull [headache] almost daily will do trial of baclofen sounds like may be tension and try to

get CT of head approved. Patient understands plan and is in agreement. . . . Follow up in 6 weeks or as needed." (*Id*. at 463, 585.)

Plaintiff saw Dr. Woltz again on June 2, 2016, for lab results. (*Id*. at 456.) Plaintiff also complained of headaches. (*Id*.) Dr. Woltz' physical exam revealed normal results. (*Id*. at 456–59.) Dr. Woltz referred Plaintiff to a neurologist to follow up on his headaches. (*Id*. at 459.)

Plaintiff again saw Dr. Woltz for headaches on July 7, 2016. (*Id*. at 453.) Dr. Woltz' physical exam revealed normal results. (*Id*. at 453–55.) Plaintiff was prescribed medication and was instructed to follow up with a neurologist. Dr. Woltz further noted that Plaintiff "reports that neuro[logist] hasn't called him, explained to [Plaintiff] that neuro[logist] has tried to call [Plaintiff] without getting an answer." (*Id*. at 455.) Treatment notes for a July 14, 2016 visit with Nurse Glenn reflect the same with respect to Plaintiff's headaches. (*Id*. at 571–73.)

On July 19, 2016, Plaintiff saw Siyun Li, MD, a neurologist at Adena Regional Medical Center. (*Id*. at 577–79.) In his treatment notes, Dr. Li stated that Plaintiff "consulted regarding persist[en]t headache and eye pain. Been going on for 3-4 months. Tried allergy medication which did not work. A dull and stabbing pain at the left temple region. Fluctuating intensity. No visual changes." (*Id*. at 578.) Dr. Li diagnosed Plaintiff with chronic headache and occipital neuralgia. (*Id*. at 577.) The doctor ordered an MRI, performed an occipital nerve block procedure, and advised a three-week follow-up. (*Id*.)

Plaintiff saw Dr. Li again on August 16, 2016. (*Id*. at 574–76.) Plaintiff reported that the occipital nerve block procedure had not helped his symptoms. (*Id*. at 574.) Treatment notes reflect that Plaintiff was "alert, oriented, in no acute distress . . . has fluent speech, cognition is intact." (*Id*.) He also noted that Plaintiff reported "NO nausea vomiting or visual changes." (*Id*.) Dr. Li prescribed gabapentin and recommended a six-week follow-up. (*Id*.)

On August 23, 2016, Plaintiff saw Dr. Woltz at HVMG Family Practice to obtain a smoking cessation aid. (*Id*. at 580–82.) Treatment notes reflect that Plaintiff was taking gabapentin (*Id*. at 580); headache was not present (*Id*. at 581); and results of physical examination were normal (*Id*. at 581–82).

Plaintiff began seeing Amanda Downs-Davis, NP at HVMG Family Practice on October 25, 2017. (*Id*. at 589.) Nurse Downs-Davis documented Plaintiff's history of headaches, his diagnosis of occipital neuropathy, and the addition of gabapentin to his medication list. (*Id*. at 590.) Treatment notes from a November 1, 2017 visit with Nurse Downs-Davis for shoulder pain reflect that Plaintiff was still taking gabapentin, and do not reflect any complaints related to headaches. (*Id*. at 586–88.)

**B.     Plaintiff's Hearing Testimony**

At the hearing, Plaintiff testified about his experience with headaches as follows:

[ALJ]: . . . Occipital neuralgia I guess we could call it degenerative headaches I suppose but what sort of treatment have you gotten for your head pain?

[Plaintiff]: They tried d[o]ing nerve block and that didn't work so then they prescribed – put me on Gabapentin.

[ALJ]: Okay.

[P]: And that seems to be helping. [inaudible] that does help some.

[ALJ]: Okay and how – how does it help do you think?

[P]: I don't know. It just kind of rolls it down.

[ALJ]: Okay. Well, can you explain the head pain and tell us what it, you know, how often is it happening or what it's doing to you?

[P]: It's just about every day it hurts right around my, like, my eyes, like, in behind my eyes.

[ALJ]: Okay, does it affect your ability to do things every day?

[P]: Sometimes. Sometimes it makes my vision blurry. [inaudible].

8

[ALJ]: And then the Gabapentin that helps but take the – does it dull it or –

[P]: Yeah, it kind of helps alleviate it some.

[ALJ]: Were you still able to do things throughout the day despite the – the eye pain?

[P]: Yeah, I tried to.

(*Id*. at 43–44.) Plaintiff made no further mention of headaches in his testimony. (*Id*. at 34–51.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff's principal contention of error is that the ALJ erred in failing to find at step two of the sequential evaluation process that Plaintiff's headaches constituted a severe impairment. (Pl.'s Statement of Specific Errors at 6, ECF No. 8.) Plaintiff further contends that such failure is not harmless because the ALJ failed to consider (or, in Plaintiff's view, failed to discuss her consideration of) Plaintiff's headaches in subsequent steps. (*Id.* at 9–10.) The Commissioner counters that the ALJ's step-two findings are supported by substantial evidence and that Plaintiff failed to put forth any specific functional limitations that result from his headaches but are not accounted for in the RFC. (Def.'s Resp. in Opp'n at 4-5, ECF No. 15.) The undersigned agrees with the Commissioner and finds Plaintiff's contention of error to be without merit.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.* at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). A severe impairment is

defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.  Where the ALJ determines that a claimant has a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).  Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), (e); 20 C.F.R. §§ 416.945(a)(2), (e). *See also Pompa*, 73 F. App'x at 803 (rejecting the plaintiff's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that plaintiff had at least one severe impairment and considered all of the plaintiff's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ determined that Plaintiff has one or more severe impairments, but declined to include Plaintiff's headaches among them. (R. at 17.) The question now before the Court is whether the ALJ appropriately considered any limiting effects caused by Plaintiff's headaches in assessing Plaintiff's RFC. The undersigned concludes that she did. Specifically, the ALJ found Plaintiff's headaches to be a non-severe impairment because the record evidence failed to show that his headaches have "more than a minimal impact on [his] ability to work." (*Id.*) The administrative decision reflects that the ALJ considered Plaintiff's testimony and also his treatment records, which include his self-reports, diagnoses, treatment recommendations, examination results, and the results of any objective testing. (*Id.*) For example, the ALJ

11

considered treatment notes from July 2016 reflecting that: findings of physical exams were generally normal (*Id*. at 453–55); Plaintiff reported episodic headaches that lasted all day and were characterized as moderate (*Id*. at 453, 571); Plaintiff was diagnosed with occipital neuralgia and chronic headache (*Id*. at 577); and Plaintiff was prescribed medication to deal with symptoms of such diagnoses (*Id*. at 577). (*Id*. at 17.) The ALJ also considered treatment notes from October 2017 indicating that Plaintiff had not visited his family physician in more than a year and reported only minor complaints (none of which related to the diagnoses of occipital neuralgia or chronic headache) (*Id*. at 589), and from November 2017 in which Plaintiff denied headaches[4] (*Id*. at 587). (*Id*. at 17.) In addition, the ALJ considered Plaintiff's hearing testimony, in which Plaintiff stated that the extent to which the headaches affect his daily life is that "[s]ometimes it makes [his] vision blurry." (*Id*. at 17, 34.) Notably, Plaintiff does not propose any specific vocational limitations or present evidence supporting any such proposal of specific limitations attributable to his headaches that are not already accommodated in the RFC the ALJ assessed. For all of these reasons, the undersigned cannot conclude that the ALJ erred in fulfilling her obligation to consider all of Plaintiff's impairments in developing the RFC.

In his Statement of Errors, Plaintiff makes two arguments in favor of a contrary result. Neither is persuasive. The undersigned addresses each argument in turn. Plaintiff first argues that the ALJ erred by citing a limited number of pages in the record to support her conclusion that his headaches were non-severe. (Pl.'s Statement of Errors at 7, ECF No. 8.) It is well

---

[4] Plaintiff repeatedly asserts that the ALJ erred in stating that the November 2017 treatment records, in the record as Exhibit No. 17F, show that Plaintiff denied headache. (Pl.'s Statement of Errors at 7–8, ECF No. 8; Pl.'s Reply at 3, ECF No. 11.) Although the page to which the ALJ cited (*i.e.*, page 1 of Exhibit No. 17F, or R. at 586) does not expressly state that Plaintiff denied headaches at this visit, the following page does. (*See* R. at 587.) The undersigned therefore finds Plaintiff's argument on this point unpersuasive.

established that an administrative law judge is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). Further, as discussed above the administrative decision demonstrates that the ALJ considered the record evidence, including objective medical evidence and Plaintiff's hearing testimony, in finding that Plaintiff's headaches were non-severe. (*See* R. at 17.) The undersigned therefore finds no error in the ALJ's citation to a limited portion of the record in support of her conclusion.

       Plaintiff goes on to argue that the ALJ erred by failing to expressly mention his headaches after step two of the sequential evaluation process. (Pl.'s Statement of Errors at 10, ECF No. 8.) In Plaintiff's view, this failure renders the ALJ's decision "unreviewable" because "[t]here is no way of knowing whether or not the ALJ actually considered [Plaintiff's headaches] at any other stage of the sequential evaluation process." (*Id*. at 8–9 (citing *Jamison v. Comm'r of Soc. Sec.*, No. 1:07-cv-152, 2008 WL 2795740 (S.D. Ohio July 18, 2008) (finding reversible error where the ALJ did not find a certain impairment to be severe and later failed to address the same impairment in developing the RFC).) Plaintiff's argument is unpersuasive. *Jamison* does not require administrative law judges to repeat the name of each severe and non-severe impairment in their statement of the RFC; instead, it requires that they consider each impairment in its development. *Jamison* at *8–9. The courts can infer from an administrative law judge's consideration of the complete record that she took each constituent impairment into account in developing the RFC. *See Miller v. Astrue*, No. CIV. A. 08-122-JBC, 2009 WL 3161456, at *2 n.1 (E.D. Ky. Sept. 29, 2009) (finding that *Jamison* did not require a finding of error where the ALJ "consider[ed] the entirety of the plaintiff's medical record in making his RFC determination"). As discussed above, the ALJ considered the record in its entirety and classified

13

Plaintiff's headaches as non-severe because the record contains "no indication that [Plaintiff's headaches have] more than a minimal impact on [his] ability to work." (*Id.*) Therefore, the undersigned finds Plaintiff's assertion that the ALJ erred in failing to discuss his headaches after step two to lack merit.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. The undersigned therefore **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE