IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Michael F. Gelbart,** | : | |
| **Plaintiff,** | : : : | |
| v. | : : | Case No. 2:19-cv-3011 |
| **Commissioner of Social Security,** | : : | **JUDGE SARAH D. MORRISON**<br>**Magistrate Judge Vascura** |
| **Defendant.** | : | |

**OPINION & ORDER**

Plaintiff Michael Gelbart brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court on the Plaintiff's Objection (ECF No. 13) to the Report and Recommendation ("R & R") issued by United States Magistrate Judge Vascura on March 24, 2020 (ECF No. 12). The Magistrate Judge recommends that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's R & R, and **AFFIRMS** the Commissioner's decision.

I.  PROCEDURAL BACKGROUND

The Magistrate Judge accurately described procedural background as follows. Plaintiff protectively filed his application under Title II of the Social Security Act for a period of disability and disability insurance benefits on January 12, 2016. (R. at 188-89.) He filed an application under Title XVI for supplemental security income that same day. (*Id*. at 190-96.) In both applications, Plaintiff alleged a disability onset of December 31, 2012. (*Id*. at 188, 190.) Plaintiff's applications were denied initially on May 31, 2016, and upon reconsideration on

1

August 3, 2016. (*Id*. at 131-37, 142-46.) Plaintiff sought a hearing before an administrative law judge. (*Id*. at 148-53.) Administrative Law Judge Noceeba Southern (the "ALJ") held a video hearing on April 11, 2018, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 13, 17.) Vocational expert Mark A. Pinti (the "VE") appeared and testified by phone at the hearing. (*Id*. at 13, 24.) On August 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id*. at 10-30.) On May 13, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id*. at 1-3.)

Plaintiff then timely commenced the instant action. (ECF No. 1.) Plaintiff's Statement of Errors (ECF No. 8) contended that the ALJ erred in classifying Plaintiff's headaches[1] as a non-severe impairment at step two of the sequential evaluation process and, therefore, failed to properly consider Plaintiff's headaches at the subsequent steps.

## II. THE ADMINISTRATIVE DECISION

On August 28, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-30.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2016. (*Id*. at 16.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Plaintiff refers to these headaches as "migraine headaches" in his Statement of Errors. (ECF No. 8.) The Magistrate Judge noted that the record does not contain a formal diagnosis of "migraine headaches." The record does, however, reflect diagnoses of "occipital neuralgia and chronic headache." (R. at 577.) The Magistrate Judge further noted that the portions of the administrative decision and administrative record referenced in Plaintiff's Statement of Errors (ECF No. 8) as pertaining to his "migraine headaches" appear to document the occipital neuralgia and chronic headache diagnoses. To avoid confusion, the Magistrate, and the undersigned, will refer to the impairment at issue as "headache," throughout.

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*,

gainful activity since December 31, 2012, the alleged onset date of Plaintiff's disability. (*Id*.) At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease; chronic obstructive pulmonary disease (COPD); osteoarthritis; an affective disorder; an anxiety disorder; degenerative joint disease of the bilateral knees and hips; and obesity. (*Id*.) The ALJ also noted several non-severe impairments, including headaches. (*Id*. at 17.) The ALJ explained her reasoning as follows:

> The claimant testified that he has pain around his eyes and behind his eyes every day. He also stated that sometimes he has blurry vision. The treatment notes show that in July 2016, the claimant reported that he had been having episodic headaches for 6 months and they could last all day but were characterized as only moderate (Exhibit 14F/l). He was diagnosed with occipital neuralgia and chronic headache. However, findings on examination were generally normal and he was treated with medication (Exhibit 15F/l, 5). Treatment notes from October 2017 indicate that the claimant had not met with his family physician for over a year and he reported only minor complaints (Exhibit l7F/4). Treatment notes from November 2017 show that the claimant denied

---

475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work? 5. Considering the claimant's age, education, past work experience, and residual

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

> headaches (Exhibit l7F/l). Thus, this is found to be nonsevere since there is no indication that this has more than a minimal impact on the claimant's ability to work.

(*Id*.) At step three, the ALJ found that Plaintiff did not have a severe impairment or combination of severe impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 17-18.) At step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand/walk 4 hours in an 8 hour day, can sit for 6 hours in an 8 hour day, can tolerate pushing and pulling occasionally with the bilateral lower extremities, can occasionally climb ramps and stairs, occasionally stoop, kneel, crouch and crawl, frequently balance, must avoid ladders, ropes or scaffolds, unprotected heights, moving or heavy machinery, frequent exposure to fumes, odors, dust and gases, limited to simple, routine tasks, occasional interaction with the public, goal based work not at a fast production rate pace with no strict production rate quotas, can tolerate occasional decision making and occasional changes so as to provide low stress.

(*Id*. at 18.) In assessing Plaintiff's RFC, the ALJ considered the evidence of record, including treatment records, medical opinion evidence, and Plaintiff's hearing testimony. (*Id*. at 19-23.) At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff is not capable of performing his past relevant work as a dump truck driver or as a telemarketer. (*Id*. at 23.) The ALJ further found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (*Id*. at 23-24.) Examples include laundry folder, inspector, and packager. (*Id*. at 24.) The ALJ found that Plaintiff is capable of making a successful adjustment to such employment. (*Id*.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id*.)

### III. RELEVANT EVIDENCE OF RECORD

**A. Treatment Notes**

The record includes treatment notes reflecting headaches dating back to mid-2013. Plaintiff visited Doctors Hospital Nelsonville for follow-up from an April 2013 seizure.[3] (*Id*. at 493.) The treatment notes from that visit state that Plaintiff "was admitted to Lancaster Hospital with diagnosis of seizure disorder, but his only complaint today is mainly that he is having frontal headaches with some dizziness ever since he started on the seizure medication that he started in Lancaster." (*Id*.)

In a follow-up appointment with Dana Johnson, CNP at Fairfield Medical Center Lancaster Neurology Services on August 13, 2013, Plaintiff again complained of headaches. (*Id*. at 516.) Nurse Johnson noted as follows:

> Having headaches on back right side of head. Every [once] in a while when sitting feels like in a "daydream state." Lasts for a couple of minutes then feels okay. Feels dizzy at times. Sometimes feels like whole room spinning and if he lies back, feels like he is being turned upside down. P/s on headaches 5/10.

(*Id*.) Nurse Johnson's physical exam of Plaintiff revealed normal results, except as related to his recent seizure activity. (*Id*. at 517-19.)

Several years pass without mention of headaches in Plaintiff's treatment records. On December 16, 2015, Plaintiff saw James Foglesong, DO at Athens Medical Associates with the chief complaint of "headache." (*Id*. at 343-47.) Dr. Foglesong noted "Patient has been having headaches for over a month now, from the time he wakes up till the time he goes to bed. Also wakes him up at night." (*Id*. at 343.) He recorded that the headaches were of "moderate" severity, and that "patient denies . . . significant headaches." (*Id*. at 345.) The results of Dr.

---

[3] The record does not include the page containing the signature and date from this visit's treatment notes.

Foglesong's physical examination were normal, noting that Plaintiff "is well developed, well nourished, and in no acute distress." (*Id*. at 346.) Dr. Foglesong ordered a CT of Plaintiff's head and brain. (*Id*.) The record does not contain results from any such CT scan.

Plaintiff first saw Shauna Glenn, NP at HVMG Family Practice on March 25, 2016. (*Id*. at 464.) Plaintiff reported that he "feels well with minor complaints and has good energy level." (*Id*.) He did, however, complain of recurrent headaches, which Nurse Glenn described as follows:

> The onset of the headache has been gradual and has been occurring in a persistent pattern for 6 months. The course has been recurrent. The headache is characterized as moderate. The headache is experienced any time of the day (no diurnal variation). The headache is described as being located in the temporal area. The symptoms are not aggravated by tension/nervous strain, noise or bright light.

(*Id*.) Nurse Glenn's physical exam of Plaintiff revealed normal results. (*Id*. at 464-66.) She prescribed medication for Plaintiff's headaches and noted that he would be requesting medical records related to treatment by prior physicians. (*Id*. at 466.)

Plaintiff saw Nurse Glenn and John W. Woltz, DO on April 22, 2016, complaining of headaches. (*Id*. at 461, 583.) The providers each described the headaches as follows:

> The onset of the headache has been gradual and has been occurring in an episodic pattern for 6 months. Each episode lasts days ("lasts pretty much all day"). The course has been recurrent. The headache is characterized as moderate. The headache is experienced any time of the day (no diurnal variation). The headache is described as being located in the temporal area ("mostly behind the left eye"). The symptoms are not aggravated by tension/nervous strain, noise or bright light. Suffers with a dull [headache] all day and then at times its [sic] worse and sometimes affects vision.

(*Id*.) The physical exam of Plaintiff again revealed normal results. (*Id*. at 462-63, 584-85.) The recommended treatment was summarized as follows: "Has bad [headaches] a few times a month

and a dull [headache] almost daily will do trial of baclofen sounds like may be tension and try to get CT of head approved. Patient understands plan and is in agreement. . . . Follow up in 6 weeks or as needed." (*Id*. at 463, 585.)

Plaintiff saw Dr. Woltz again on June 2, 2016, for lab results. (*Id*. at 456.) Plaintiff also complained of headaches. (*Id*.) Dr. Woltz' physical exam revealed normal results. (*Id*. at 456-59.) Dr. Woltz referred Plaintiff to a neurologist to follow up on his headaches. (*Id*. at 459.)

Plaintiff again saw Dr. Woltz for headaches on July 7, 2016. (*Id*. at 453.) Dr. Woltz' physical exam revealed normal results. (*Id*. at 453-55.) Plaintiff was prescribed medication and was instructed to follow up with a neurologist. Dr. Woltz further noted that Plaintiff "reports that neuro[logist] hasn't called him, explained to [Plaintiff] that neuro[logist] has tried to call [Plaintiff] without getting an answer." (*Id*. at 455.) Treatment notes for a July 14, 2016 visit with Nurse Glenn reflect the same with respect to Plaintiff's headaches. (*Id*. at 571-73.)

On July 19, 2016, Plaintiff saw Siyun Li, MD, a neurologist at Adena Regional Medical Center. (*Id*. at 577-79.) In his treatment notes, Dr. Li stated that Plaintiff "consulted regarding persist[en]t headache and eye pain. Been going on for 3-4 months. Tried allergy medication which did not work. A dull and stabbing pain at the left temple region. Fluctuating intensity. No visual changes." (*Id*. at 578.) Dr. Li diagnosed Plaintiff with chronic headache and occipital neuralgia. (*Id*. at 577.) The doctor ordered an MRI, performed an occipital nerve block procedure, and advised a three-week follow-up. (*Id*.)

Plaintiff saw Dr. Li again on August 16, 2016. (*Id*. at 574-76.) Plaintiff reported that the occipital nerve block procedure had not helped his symptoms. (*Id*. at 574.) Treatment notes reflect that Plaintiff was "alert, oriented, in no acute distress . . . has fluent speech, cognition is

7

intact." (*Id.*) He also noted that Plaintiff reported "No nausea vomiting or visual changes." (*Id.*) Dr. Li prescribed gabapentin and recommended a six-week follow-up. (*Id.*)

On August 23, 2016, Plaintiff saw Dr. Woltz at HVMG Family Practice to obtain a smoking cessation aid. (*Id.* at 580-82.) Treatment notes reflect that Plaintiff was taking gabapentin (*Id.* at 580); headache was not present (*Id.* at 581); and results of physical examination were normal (*Id.* at 581-82).

Plaintiff began seeing Amanda Downs-Davis, NP at HVMG Family Practice on October 25, 2017. (*Id.* at 589.) Nurse Downs-Davis documented Plaintiff's history of headaches, his diagnosis of occipital neuropathy, and the addition of gabapentin to his medication list. (*Id.* at 590.) Treatment notes from a November 1, 2017 visit with Nurse Downs-Davis for shoulder pain reflect that Plaintiff was still taking gabapentin, and do not reflect any complaints related to headaches. (*Id.* at 586-88.)

### B. Plaintiff's Hearing Testimony

At the hearing, Plaintiff testified about his experience with headaches as follows:

> [ALJ]: . . . Occipital neuralgia I guess we could call it degenerative headaches I suppose but what sort of treatment have you gotten for your head pain?
> [Plaintiff]: They tried d[o]ing nerve block and that didn't work so then they prescribed — put me on Gabapentin.
> [ALJ]: Okay.
> [P]: And that seems to be helping. [inaudible] that does help some.
> [ALJ]: Okay and how — how does it help do you think?
> [P]: I don't know. It just kind of rolls it down.
> [ALJ]: Okay. Well, can you explain the head pain and tell us what it, you know, how often is it happening or what it's doing to you?
> [P]: It's just about every day it hurts right around my, like, my eyes, like, in behind my eyes.
> [ALJ]: Okay, does it affect your ability to do things every day?
> [P]: Sometimes. Sometimes it makes my vision blurry. [inaudible].
> [ALJ]: And then the Gabapentin that helps but take the — does it dull it or -
> [P]: Yeah, it kind of helps alleviate it some.

> [ALJ]: Were you still able to do things throughout the day despite the — the eye pain?
> [P]: Yeah, I tried to.

(*Id.* at 43-44.) Plaintiff made no further mention of headaches in his testimony. (*Id.* at 34-51.)

## IV. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

"A decision is supported by substantial evidence where a reasonable mind could find that the evidence is adequate to support the conclusion reached." *Dugan v. Comm'r of Soc. Sec.*, 742 F. App'x 897, 900 (6th Cir. 2018) (citation omitted). "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

9

## V. DISCUSSION

Plaintiff's single objection states that the ALJ improperly classified his headaches as a non-severe impairment. (ECF No. 13 at 2.) Specifically, Plaintiff argues that the ALJ "improperly relied upon an extremely narrow view of the medical record that resulted in an inaccurate description of the impact that Mr. Gelbart's [headaches] had on his functional capacity." *Id*. He takes issue with the ALJ citing to only five pages of the record in support of her conclusion, as those pages "did not accurately represent" his headaches. *Id*. In essence, he alleges that the ALJ did not consider what he deems to be the beneficial portions of the record when reaching her determination. *Id*. at 3. Such evidence, he maintains, shows that his headaches "more than minimally impacted" his ability to work. *Id*.

The ALJ specifically states that she considered the entire record when reaching her conclusions. (R. at 18; *see also* ECF No. 12 at 13.) Furthermore, the R&R correctly states, and Plaintiff properly concedes, that the ALJ is not required to "'discuss every piece of evidence in the record to substantiate'" her decision. (ECF No. 12 at 13) (quoting *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)).

As a result, Mr. Gelbart's argument becomes one of weight—he disagrees with how much weight the ALJ placed on evidence to his detriment within the record. But the Court's focus is on whether the decision is supported by substantial evidence. *Ealy*, 594 F.3d at 512. In her well-reasoned opinion, the Magistrate discusses why the ALJ's determination satisfies that standard. Properly framing the issue as "whether the ALJ appropriately considered any limiting effects caused by Plaintiff's headaches in assessing the Plaintiff's RFC," the Magistrate notes the ALJ concludes that the record evidence fails to show that Plaintiff's headaches have "more than a minimal impact on [his] ability to work." (ECF No. 12 at 11 citing R. at 17.)

That evidence, summarized above, includes plaintiff's testimony, treatment records, diagnoses, treatment recommendations, examination results, self-reports, and testing results. Highlights from those categories mention headaches characterized as episodic, moderate, addressed with medication and "sometimes" affecting Mr. Gelbart's ability to do things. (R. at 17, 34-51.) Treatment notes from October 2017 indicate a gap of a year in seeking care from his family physician and contain no complaints of headaches. (R. at 589.) Treatment notes from November 2017 include Plaintiff denying having headaches. (R. at 587.) After careful *de novo* review of the record, the Court concurs with the Magistrate Judge that the evidence supporting the ALJ's determination is substantial. And while Plaintiff argues that the ALJ should have placed bigger emphasis on evidence in the record that was more favorable to him, the Court declines to interfere with the ALJ's zone of choice. *See Mullen supra; see also* ECF No. 8 at 7-8. As such, the Court concludes that substantial evidence supports the ALJ's decision denying benefits, and the Court **OVERRULES** the Plaintiff's Objection. (ECF No. 13.)

## VI. CONCLUSION

Based upon the foregoing, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, and after a *de novo* determination of the record, this Court concludes that Plaintiff's objections to the R & R of the Magistrate Judge are without merit. The Court thus **OVERRULES** the Plaintiff's Objection (ECF No. 13), **ADOPTS** the Magistrate Judge's R & R (ECF No. 12), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

11